UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:18-cr-00073-HAB-SLC |
| | ) | |
| LEMOND LEDFORD | ) | |

### REPORT AND RECOMMENDATION

Before the Court is a motion to suppress evidence (DE 24) filed by Defendant Lemond Ledford.  Ledford seeks to suppress evidence discovered by police during a traffic stop on March 31, 2018.  Ledford contends that the evidence from the encounter was obtained as a result of violations of his Fourth Amendment rights.  After considering the evidence and arguments submitted by the parties in this matter, I RECOMMEND that Ledford's motion to suppress evidence be DENIED.

### I.  BACKGROUND

On July 25, 2018, the Government indicted Ledford by way of a single-count indictment, charging him with being a felon in possession of a firearm.  (DE 1).  On August 16, 2018, Ledford pleaded not guilty to the charge in the indictment.  (DE 17).  On November 6, 2018, Ledford filed the instant motion to suppress.  (DE 24).  The matter was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-1.  (DE 28).

An evidentiary hearing on this matter was held on February 6, 2019.  (DE 32).  On May 6, 2019, Ledford filed a post-hearing brief in support of his motion to suppress.  (DE 42).  The Government filed its response on June 5, 2019.  (DE 43).  On June 19, 2019, Ledford filed his reply brief.  (DE 44).

## II.  FINDINGS OF FACT

At the hearing, the Government offered the testimony of Fort Wayne Police Department ("FWPD") Officers Douglas Weaver ("Officer Weaver"), Brian Juricak ("Officer Juricak"), and Nicholas Lichtsinn ("Officer Lichtsinn").  (DE 34 Transcript of Motion to Suppress Hearing ("Tr.") at 2).  Ledford did not offer the testimony of any witnesses.  For the reasons discussed below I FIND the testimony of the Government's witnesses to be credible.

On March 31, 2018, Officer Weaver was patrolling the northwest area of Fort Wayne, wearing a fully marked FWPD uniform and driving a fully marked FWPD squad car.  (Tr. 6-7).  Officer Weaver testified that he worked in that area for some time and knew it to be a high drug and crime area.  (Tr. 8-9).

At around 12:00 a.m., while idling in a gas station, Officer Weaver observed a red Chevy Avalanche truck pull into the parking lot of the Regency Inn and stay there for about 10 minutes.  (Tr. 8-9).  While the truck was parked, Officer Weaver observed somebody get in and out of the vehicle.  (Tr. 8).  Officer Weaver testified that when the truck pulled into the parking lot and when it left, he observed that a headlight was out on the front passenger side.  (Tr. 8; Ex. 1 at 00:23-00:26[1]).

The truck, driven by Ledford, pulled out of the parking lot and began traveling eastbound on Coliseum Boulevard in the third lane from the right.  (Tr. 9; Ex. 1 at 00:30-00:50).  Officer Weaver began to follow the truck and observed it cross and straddle the white line separating traffic lanes.  (Tr. 9; Ex. 1 at 00:36-00:045).  Then, the truck began to merge into the center lane but failed to indicate the merger with its turn signal.  (Tr. 8-9, 14-15; Ex. 1 at 00:36-00:50).

At this point, Officer Weaver activated his emergency lights.  (Tr. 8-9; Ex. 1 at 00:45).

---

[1] The exhibits identified in this Report and Recommendation were submitted at the motion to suppress hearing.

2

Ledford, however, did not immediately pull over; rather, he continued to merge into the center lane and there came to a brief stop. (Tr. 9; Ex. 1 at 00:45-1:00). Officer Weaver, in a further effort to effectuate a traffic stop, activated the sirens on his FWPD squad car. (Tr. 9; Ex. 1 at 00:55). The truck briefly continued to travel eastbound on Coliseum Bouvard, then turned right onto Lima Road where it came to a stop. (Tr. 9-10; Ex. 1 at 01:00-01:30).

Officer Weaver exited his vehicle and walked up to the front driver-side window of the truck where Ledford was seated. (Ex. 1 at 01:30-01:50). Before he reached the window, Officer Weaver noticed Ledford put a bottle of vodka in the back seat of the truck. (Tr. 10; *see also* Ex. 1 at 01:50-01:53). Officer Weaver requested Ledford's license and vehicle registration and noticed that Ledford had red and watery eyes. (Tr. 14-15; Ex. 1 at 01:55-02:55). Ledford produced his license but failed to produce his registration. (Tr. 14-15; Ex. 1 at 01:55-03:35). Around this time, Officer Juricak arrived on the scene wearing a fully marked police uniform and driving a fully marked FWPD police vehicle. (Tr. 41-43).

Officer Weaver returned to his squad car to run the information that Ledford had given to him. (Tr. 14-15). Around this time Officer Lichtsinn arrived at the stop. (Tr. 47-48). Based on Officer Weaver's observations—that is, Ledford had been slow to respond to Officer Weaver's emergency lights and sirens, stopped in the center lane briefly, changed lanes without signaling, had red and watery eyes, and tried to conceal a bottle of alcohol—he believed that Ledford was intoxicated. (Tr. 14-16). Therefore, Officer Weaver intended to conduct a field sobriety test. (Tr. 14-16).

After running Ledford's information, Officer Weaver returned to the truck and instructed Ledford to step out of the truck. (Tr. 16, 43; Ex. 1 at 05:30-05:36). Ledford did not comply with this instruction, and a struggle ensued between Ledford and the three officers on the scene. (Tr.

3

16-17, 44-45, 49-50; Ex. 1 at 05:36-06:06). Ledford refused to exit the truck and held on to its steering wheel to keep from being forced out, but the officers overpowered and removed him. (Tr. 17, 44-45, 49-50, 54; Ex. 1 at 05:36-06:06). Once outside of the vehicle, Ledford resisted the officers' instructions to put his hands behind his back and be handcuffed. (Tr. 17, 51-52; Ex. 1 at 06:05-07:05). Again, after a struggle, the officers overpowered Ledford and handcuffed him. (Tr. 17, 51-52; Ex. 1 at 06:05-07:05).

The decision was made to tow the truck. (Tr. 17). Prior to towing the truck, the officers conducted an inventory search of the vehicle pursuant to FWPD policy. (Tr. 17). Upon searching the truck, the officers found an open bottle of Grey Goose vodka (Tr. 19; Ex. 3), a pistol with a loaded magazine (Tr. 19-21; Ex. 4; Ex. 5; Ex. 6; Ex. 7), a black gun case with 33 rounds of ammunition inside of it (Tr. 21-22; Ex. 9; Ex. 10; Ex. 11), a wad of cash (Tr. 22; Ex. 12), and a small baggie containing Cialis (Tr. 22; Ex. 13). Officer Weaver also learned that Ledford had been convicted of a felony. (*See generally* Tr. 28-29).

Officer Weaver cited Ledford for resisting law enforcement, driving a vehicle with an improper headlight, an open container violation, unlawful possession of a firearm by a serious violent felon, and unlawful possession of the Cialis. (Ex. A). Officer Weaver testified that he exercised his discretion and did not cite Ledford for failing to signal before changing lanes or straddling the line between lanes. (Tr. 34-35). Officer Weaver testified that he does not always cite every person for every traffic violation they commit, and in this instance, he did not feel the need to place more financial hardship on Ledford by citing him for additional traffic violations. (Tr. 34-35). Nevertheless, Officer Weaver testified that Ledford's failure to signal a lane change and straddling the white line provided additional cause to stop Ledford. (Tr. 15, 35). Ledford did not offer any evidence contradicting this testimony and I FIND that it is credible.

4

## III.  DISCUSSION

### A.  Legal Standard

"The Fourth Amendment protects citizens against unreasonable searches and seizures. Ordinarily, warrantless searches are presumptively unreasonable." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013); *see* U.S. Const. amend. IV; *United States v. Whitaker*, 546 F.3d 902, 906 (7th Cir. 2008) ("The Fourth Amendment to the Constitution of the United States prevents the Government from conducting unreasonable searches and seizures." (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002))).  When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. at 810 (citations omitted).  Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000); *see also United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012).  The probable cause standard is an objective one, not a subjective one, and any ulterior motive an officer may have for making the stop is irrelevant.  *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813); *United States v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003).

### B.  Analysis

Ledford argues that Officer Weaver's traffic stop violated the Fourth Amendment because:  (1) Ledford's vehicle was properly outfitted with headlights; (2) Officer Weaver did not stop Ledford for straddling the white line or failing to signal; and (3) evidence that Ledford

5

failed to stop after Officer Weaver activated his emergency lights was unlawfully obtained. As discussed below, Ledford's arguments fail.

First, Ledford contends that his vehicle was properly equipped with headlights. Thus, Ledford argues, Officer Weaver did not have probable cause to believe Ledford violated Indiana Code § 9-16-6-3. Section 9-16-6-3(a) provides, in relevant part, that "[a] motor vehicle other than a motorcycle or motor driven cycle must be equipped with at least two (2) head lamps, with at least one (1) of the head lamps on each side of the front of the motor vehicle." A head lamp must also be located at a height of not less than 24 inches and not more than 54 inches from the ground. *Id*. § 9-16-6-3(d).

Ledford argues that he had a working light on each side of the truck and that no measurements were taken before the traffic stop to see if the height of the headlight on the front passenger side complied with Indiana Code § 9-19-6-3(d). Thus, Ledford argues, Officer Weaver's suspicion that Ledford's front passenger-side headlight violated Indiana Code § 9-19-6-3 was no more than a hunch, and insufficient to support a seizure under the Fourth Amendment.

Ledford's argument fails. It may ultimately be true that Ledford's vehicle did not violate Indiana Code § 9-19-6-3, but this would not affect whether Officer Weaver of probable cause to believe otherwise. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the officer at the time he acts." *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010) (citation and internal quotation marks omitted). The issue "is not whether [Ledford] would have been convicted of a violation in traffic court. The issue is whether there was probable cause that a traffic law had been violated." *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (citation omitted).

Ledford does not contest that some light on the front passenger side of his vehicle was not functioning. Indeed, Officer Weaver's dash-cam video shows that a front light on the passenger side of Ledford's vehicle was not functional. (Ex. 1 at 00:23-00:26). This is consistent with Officer Weaver's testimony that he believed Ledford's truck's front headlight did not comply with Indiana law. Therefore, I FIND that Officer Weaver had probable cause to stop Ledford for a violation of Indiana Code § 9-19-6-3.[2] *See United States v. Garcia-Garcia*, 633 F.3d 608, 615-16 (7th Cir. 2011) ("The object the trooper observed was small, but given its size and position relative to the driver, a reasonable officer could conclude that it violated the Illinois statute prohibiting material obstructions. That reasonable belief is all that is needed to justify the warrantless stop." (citation omitted)).

Second, Ledford contends that Officer Weaver's probable-cause calculus did not include Ledford straddling the white line and changing lanes without signaling. The Seventh Circuit Court of Appeals applies "an objective analysis of the circumstances; if there was probable cause to make the stop," and looks at whether the stopping officer was acting with authority, and if so, the stop was not pretextual. *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995) (citing *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989)).

Ledford points out that Officer Weaver's step-by-step characterization of events in his probable-cause affidavit and his citations lack any mention of a failure to signal or straddling the line between lanes. (*See* Ex. A; Ex. B). While this is true, Officer Weaver also testified that he considered these additional traffic violations as cause to stop Ledford at the time but did not

---

[2] In other words, Officer Weaver had probable cause to believe that Ledford's headlights did not comport with Indiana Code § 9-19-6-3 regardless of whether they actually did. Therefore, the undersigned Magistrate Judge need not address the parties' arguments regarding whether Officer Weaver's probable cause was impermissibly based on an erroneous understanding of Indiana Code § 9-19-6-3. *See United States v. Tyler*, 512 F.3d 405, 411 (7th Cir. 2008) ("[W]e have held that a mistake of law (as opposed to a mistake of fact) cannot justify an investigative detention." (citing *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006)).

7

record them because it did not seem necessary.  Ledford argues that Officer Weaver's testimony is little more than a post hoc justification; Officer Weaver only realized that Ledford's violations of Indiana Code §§ 9-21-8-24 and 9-21-8-25 after he reviewed the dash-cam footage.

Ledford's argument fails.  Although Ledford argues that Officer Weaver "did not know that Mr. Ledford partially crossed a lane without using a turn signal until well after the arrest of Mr. Ledford" (DE 44 at 5), the dash-cam video clearly shows Ledford straddling the white line separating lanes and failing to signal while crossing two lanes of traffic.  (Ex. 1 at 00:36-1:10).  Furthermore, Officer Weaver offered credible reasons for not citing Ledford for these traffic violations.

Ultimately, the evidence and Officer Weaver's testimony clearly demonstrate that Ledford's actions—that is, straddling the line separating lanes and changing lanes without signaling—violated Indiana Code §§ 9-21-8-24 and 9-21-8-25, and that Officer Weaver observed these violations.  Thus, I CONCLUDE that Officer Weaver had probable cause to stop Ledford for violations of Indiana Code §§ 9-21-8-24 and 9-21-8-25.  *See Willis*, 61 F.3d at 530 (citation omitted).

Third, Officer Weaver had probable cause to stop Ledford when he activated his emergency lights and sirens, but Ledford failed to stop.  *See* Ind. Code § 35-44.1-3-1(a)(3) (fleeing "from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights" is a misdemeanor).  Ledford's sole counter argument on this point appears to be that he was already unlawfully seized under the Fourth Amendment once Officer Weaver activated his emergency lights.  Thus, according to Ledford, any evidence obtained after Officer Weaver activated his emergency lights should be suppressed because Officer Weaver lacked probable cause to

effectuate a traffic stop in the first place. (*See* DE 44 at 4 ("As stated, the Government's argument on this point, as well as everything that occurred after Officer Weaver activated his light bar, is irrelevant to the issue now before the Court. What occurred after the stop is not relevant.")).

Ledford's argument is erroneous because he was not seized until the vehicle had stopped moving and he "submit[ted] to the officer[.]"[3] *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013) (citing *California v. Hodari D.*, 499 U.S. 621-26 (1991)); *see United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *United States v. Mays*, 819 F.3d 951, 956 (7th Cir. 2016) ("'Even when somebody is confronted with an obvious show of authority, he is not seized until his freedom of movement is terminated by an application of physical force or by the suspect's submission to the asserted authority.'" (quoting *United States v. $32,400.00, in U.S. Currency*, 82 F.3d 135, 138-39 (7th Cir. 1996))). Officer Weaver's dash-cam video shows that Ledford failed to stop in response to Officer Weaver's emergency lights and sirens; rather, Ledford continued driving. (Ex. 1 at 00:45-01:30). Therefore, I FIND that Officer Weaver had probable cause to stop Ledford for a violation of Indiana Code § 35-44.1-3-1(a)(3).

In conclusion, I FIND that Officer Weaver had probable cause to believe that Ledford committed the traffic offenses discussed above, and, therefore, Ledford's constitutional rights were not violated. *United States v. Parker*, No. 115CR00214JMSDKL, 2016 WL 2735768, at *5 (S.D. Ind. May 11, 2016) ("Even if the traffic stop were the result of law enforcement's hopes to stop Mr. Parker, no constitutional violation occurred because the Court finds that Mr. Parker did

---

[3] The Government also contends that Officer Weaver's interactions and observations after stopping Ledford conferred reasonable suspicion to suspect that Ledford was engaged in criminal activity, thus justifying Officer Weaver's instruction for Ledford to exit the vehicle. (DE 43 at 9-11). Ledford's only response to this argument is that Officer Weaver lacked probable cause to stop him in the first place, and so the Court should disregard observations and evidence after the allegedly unlawful stop. (DE 44 at 9-10). Having determined that Officer Weaver had probable cause to believe Ledford committed three traffic violations, the Court need not analyze the parties' arguments on this point.

commit a traffic violation and Sgt. Wildauer had a proper reason to initiate a traffic stop." (citing *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996); *Willis*, 61 F.3d at 530)).

## IV.  CONCLUSION

For the above reasons, I CONCLUDE that Ledford's Fourth Amendment rights were not violated as to warrant suppressing the evidence in this case.  I therefore RECOMMEND that Ledford's motion to suppress evidence (DE 24) be DENIED.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.  Fed. R. Crim. P. 59(b)(2).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Dated this 19th day of July 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge